
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE PAPPAS, on behalf of himself and all others similarly situated; ARKANSAS TEACHER RETIREMENT SYSTEM, FIRE & POLICE PENSION ASSOCIATION OF COLORADO; BARRY BRAHN; SHELLEY B. KATZEFF; THOMAS P. DINAPOLI, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund, and of the New York City Pension Funds, | No. 11-55570 D.C. No. 2:07-cv-05295-MRP-MAN MEMORANDUM[*] |
| Plaintiffs - Appellees, | |
| and | |
| COUNTRYWIDE FINANCIAL CORP.; ANGELO R. MOZILO; ERIC P. SIERACKI; DAVID SAMBOL; JEFFREY M. CUNNINGHAM; ROBERT J. DONATO; MARTIN R. MELONE; ROBERT T. PARRY; OSCAR P. ROBERTSON; KEITH P. RUSSELL; HARLEY W. SNYDER; HENRY G. CISNEROS; STANFORD L. KURLAND; BEN ENIS; EDWIN HELLER; | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

COUNTRYWIDE HOME LOANS INC.;
COUNTRYWIDE CAPITAL V; FENNER
& SMITH INC.,

        Defendants - Appellees,

  v.

THE BANK OF AMERICA 401(K)
PLAN FOR LEGACY COMPANIES, as a
Successor to the Countrywide Financial
Corporation 401(k) Savings and
Investment Plan,

        Objector - Appellant.

Appeal from the United States District Court
for the Central District of California
Mariana R. Pfaelzer, Senior District Judge, Presiding

Argued and Submitted April 9, 2013
Pasadena, California

Before: REINHARDT and MURGUIA, Circuit Judges, and MOLLOY, District Judge.[**]

In the wake of the housing and financial crisis, Countrywide Financial

Corporation's stock price plummeted and, while it was on the brink of collapse,

Bank of America acquired the company. Numerous class action securities suits

---

[**] The Honorable Donald W. Molloy, District Judge for the U.S. District Court for the District of Montana, sitting by designation.

followed and were consolidated into this action. After extensive litigation, the claims were narrowed and Plaintiffs moved to certify a class. The district court granted the motion in part, crafting its own definition of the class:

> All persons or entities that, between March 12, 2004 and March 7, 2008, inclusive (the "Class Period"), either in the open market or pursuant or traceable to a registration statement:
>
> (i) Purchased or otherwise acquired Countrywide Financial Corporation ("Countrywide") publicly traded common stock or call options, and/or sold Countrywide publicly traded put options (the "Common Stock Subclass"); or
>
> [Purchased or otherwise acquired other securities not at issue on appeal]
>
> and were damaged thereby (these Subclasses will collectively be referred to as the "Class.").

While summary judgment motions were pending, the parties reached a Settlement Agreement, with Defendants agreeing to pay $624 million. Plaintiffs crafted a Plan of Allocation ("POA") that described the process of distributing the Settlement. The court issued a Preliminary Approval Order informing class members of their right to opt-out or object to the Settlement Agreement and POA.

The Bank of America 401(k) Plan for Legacy Companies ("the Plan") is a class member controlled by a committee of Bank of America executives that faced a conflict of interest evaluating the Settlement Agreement and POA because they

were obligated to act in the best interest of the Plan (a member of the plaintiff class), but also owed loyalty to Bank of America (a Defendant). Pursuant to the Employee Retirement Income Security Act of 1974, which constrained the committee from acting in the face of such a conflict, the Plan appointed Independent Fiduciary Services, Inc. ("IFS") to evaluate the Settlement and POA. IFS retained counsel and, on behalf of the Plan, filed an objection to the Settlement and POA.

The objection was unique because rather than arguing that the Settlement Agreement was inadequate, the Plan sought clarification of the terms of the POA. In fact, at oral argument in these proceedings the Plan explicitly disclaimed any objection to the Settlement Agreement, stating that it only objected to the district court's ruling on the scope of the POA.

The objection relates to two general issues. First, the Plan argues that stock registered on a Form S-8 registration statement and distributed to employees as matching contributions or as a portion of their discretionary salary falls under the definition of the Common Stock Subclass. Second, the Plan contends that trades of unitized interests in the Countrywide Common Stock Fund ("the Fund") also fall within the definition of the Common Stock Subclass.

The district court overruled the objection. The district court rejected the Plan's argument that the class definition includes common stock "not purchased on the open market" and "transactions which occurred outside of the class period." In light of the scant factual record and the district court's narrow holding, the question properly before us is: whether the district court erred when it held that the POA limits claims relating to Countrywide Common Stock to purchases made "on the open market" during the class period. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006) (en banc) (purely legal questions are more likely ripe). We find no error and affirm.

Interpretation of the POA is controlled by California contract law, *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993), which rejects the traditional rule that unambiguous language in an agreement is dispositive, *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 568–69 (9th Cir. 1988) (citing *Pac. Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 (1968)). The district court's factual conclusions based on extrinsic evidence are reviewed for clear error, and its application of legal principles to those facts is reviewed de novo. *Stephens v. City of Vista*, 994 F.2d 650, 655 (9th Cir. 1993).

This seemingly complex dispute turns on the phrase "either in the open market *or* pursuant or traceable to a registration statement." The parties offer two

competing interpretations of this phrase and its relation to the Common Stock Subclass. The Plan focuses on the word "or" and argues that because the clause is phrased in the disjunctive, securities in every Subclass can either be purchased on the open market or acquired pursuant to a traceable registration statement. According to the Plan, common stock need not be purchased "in the open market" because it could also be purchased or acquired "pursuant to a registration statement."

Plaintiffs offer a different reading of the "either . . . or . . ." language. They argue that it must be read in the context of the entire agreement and extrinsic evidence. According to Plaintiffs, the language means that securities in some Subclasses must be purchased or acquired "in the open market," and securities in other Subclasses must be purchased or acquired "pursuant to a registration statement." Plaintiffs argue that the securities in the Common Stock Subclass must be purchased "in the open market."

The district court's conclusion that extrinsic evidence supports the Plaintiffs's reading of the POA was not clear error. Both the complaint and Settlement Agreement indicate that claims relating to common stock are limited to Section 10(b) claims. The complaint's theory of Section 10(b) liability is premised on the allegation that Countrywide's fraudulent statements caused fraud on the

market by inflating the price of stock purchased in the open market, therefore creating a presumption of reliance. The district court's thorough and detailed class certification memorandum indicates that the Section 10(b) claims relied on the fraud-on-the-market theory and that the Section 11 claims relied on the theory that the securities were issued pursuant to a valid registration statement.

The Plan's principal argument in reply is that the plain text of the POA is unambiguous but under California law such an argument is unpersuasive in light of extrinsic evidence suggesting an ambiguity, *Trident*, 847 F.2d at 568–69. Additionally, the fact that the Plaintiffs *could* have alleged Section 11 claims based on securities in the Common Stock Subclass has no bearing on what they actually alleged in the complaint.

We affirm the district court. Securities in the Common Stock Subclass must have been purchased on the open market during the class period. It is not enough that securities in the Common Stock Subclass were purchased or acquired pursuant to a registration statement.

Our decision is limited to affirming the district court's interpretation of the POA. To the extent the parties ask us to make "factual determinations on the merits of this case to ascertain whether certain individuals were to be included in the class," we decline to do so because that type of determination is for the district

court to make in the first instance and is reviewed for an abuse of discretion. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Thus, we make no attempt to decide whether certain claims should be compensated under the POA. Because there is no factual basis in the record, we cannot answer the question as it was presented to us at oral argument: whether the shares of stock acquired by Plan members directly from the company or through intra-Plan trades should be treated the same as common stock purchased in the open market. That question is not ripe for review. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (objection to distribution of residual settlement funds was not ripe because existence of such funds was uncertain); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (generally describing ripeness inquiry).

On numerous occasions the district court expressed dismay at the lack of evidence supporting the Plan's objections and suggested that it was unable to decide some of the issues based on the record it was presented. The parties both asserted at oral argument that the district court had decided all of the issues necessary to resolve their dispute and that by affirming the district court we would end this dispute. We disagree. We affirm the district court, but we do not end the dispute because we do not decide the question that is not yet ripe.

**Requests for Judicial Notice**

We grant Plaintiffs' request for judicial notice of the *Layne* settlement agreement and related court documents because the documents are judicially noticeable, *see Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (public court documents can be judicially noticed), and relate to events that occurred after the district court's fairness hearing, *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971).

We deny the Plan's requests for judicial notice of the Plan's own founding document of documents filed in *Alvidres,* and of documents filed by Countrywide with the SEC. All of the documents pre-date the fairness hearing and the Plan could have presented them to the district court. A party may "not cure her failure to present the trial court with facts sufficient to establish the validity of her claim by requesting that this court take judicial notice of such facts." *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc). Not only did the Plan neglect to submit this evidence to the district court, but it failed to do so after the district court held a previously unscheduled telephonic conference to discuss the Plan's lack of evidence supporting its claim.

**AFFIRMED.**