In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1759

DAVID HANSON,

*Plaintiff-Appellant*,

*v.*

DANE COUNTY, WISCONSIN, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-cv-058-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED JANUARY 21, 2010—DECIDED JUNE 15, 2010

Before EASTERBROOK, *Chief Judge*, and CUDAHY and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. By the time the 911 dispatcher in Dane County picked up the phone to receive a call, the connection had been broken. The dispatcher called back; no one answered. Police were alerted, and three officers soon arrived at the house from which the call had been placed. They entered without permission and questioned the four occupants:

David Hanson, his wife Karen, and their daughters Kari (then 15 years old) and Kelly (13). Eventually they learned that during a heated argument David had bumped Karen, who dialed 911. David was arrested for domestic battery. Karen refused to cooperate with the prosecution, which was dismissed. David then filed this suit under 42 U.S.C. §1983, contending that the police violated the fourth, fifth, and fourteenth amendments to the Constitution. But the district court granted summary judgment to the defendants. 599 F. Supp. 2d 1046 (W.D. Wis. 2009). We recite the facts of record and reasonable inferences in the light most favorable to David.

According to David, the police violated the fourth amendment by entering without probable cause and refusing to leave as soon as Karen asked them to go. Like the district judge, we think that a 911 call provides probable cause for entry, if a call back goes unanswered. The 911 line is supposed to be used for emergencies only. A lack of an answer on the return of an incomplete emergency call implies that the caller is unable to pick up the phone—because of injury, illness (a heart attack, for example), or a threat of violence. See *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003); *United States v. Richardson*, 208 F.3d 626, 629–30 (7th Cir. 2000). Any of these three possibilities supplies both probable cause and an exigent circumstance that dispenses with the need for a warrant. See *Brigham City v. Stuart*, 547 U.S. 398 (2006). There are of course other possibilities. Perhaps a child dialed 911 by mistake, or perhaps the ringer had been set to silent so the phone did not alert anyone to the incoming call from the 911 dispatcher. But

probable cause just means a good reason to act (the fourth amendment protects people against "unreasonable" searches and seizures); it does not mean certainty, or even more likely than not, that a crime has been committed or a medical emergency is ongoing. See *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

Karen asked the police to leave, but officers who have probable cause need not cancel an investigation on request. The fourth amendment does not contain a least-restrictive-alternative rule. See *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 629 n.9 (1989). Nor did Karen's statement that she was unharmed establish that there was no need for further inquiry. See *United States v. Brooks*, 367 F.3d 1128, 1137 (9th Cir. 2004); *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999). To the contrary, her statements supported the officers' actions. Karen told the police that she had called 911 but could not remember why; she said that she and David had been arguing but that she could not remember the subject. The argument and call were so recent that reasonable officers could not have believed Karen's assertion that her memory had failed. Her obviously false statements, plus her nervous demeanor, led the police to think that she had been threatened or feared retaliation should she give honest answers. Many victims of domestic violence fear that the danger they face will increase if they assist police or prosecutors. See, e.g., Eve S. Buzawa & Carl G. Buzawa, *Domestic Violence: The Criminal Justice Response* 177–89 (3d ed. 2002); Tom Lininger, *Prosecuting Batterers after Crawford*, 91 Va. L. Rev. 747, 768–70 (2005) (collecting studies). So the police

acted reasonably by continuing their investigation and questioning Karen and David out of each other's presence.

And, given the lack of cooperation by David and Karen, it was also reasonable for the officers to ask Kari and Kelly for information. This questioning was civil and ended promptly after the daughters said that they did not know what their parents had been arguing about and did not believe that a physical altercation had occurred.

David insists that the questions to his daughters violated principles of substantive due process. Yet the daughters are not plaintiffs, either directly or through a next friend. David's suit depends on his rights, not theirs. Substantive due process is a doctrine limited to impingement on fundamental rights, see *Washington v. Glucksberg*, 521 U.S. 702, 719-22 (1997), and no decision of which we are aware holds that parents have a fundamental right to prevent police from questioning their children. The public has a right to every person's evidence. *United States v. Bryan*, 339 U.S. 323, 331 (1950). Courts regularly find no constitutional problem in posing questions to minors over their parents' opposition. See, e.g., *United States v. Hollingsworth*, 495 F.3d 795, 800–03 (7th Cir. 2007). Police must not act arbitrarily when questioning children, see *Doe v. Heck*, 327 F.3d 492, 517–26 (7th Cir. 2003), but it was not arbitrary to find out whether Kari and Kelly knew what had happened.

Although "familial relations" are fundamental, see *Troxel v. Granville*, 530 U.S. 57, 65 (2000), the police did not

break up the Hanson family; they just asked some questions of the daughters to learn whether a crime had occurred. Police don't need probable cause to ask questions, because the subject can refuse to answer. See *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc). "Familial relations are fundamental" is a principle at too high a level of generality to be useful in considering whether police may ask questions of a family's minor children. Cf. *Michael H. v. Gerald D.*, 491 U.S. 110, 118–27 (1989) (plurality opinion).

David's arrest did more to separate members of the family than a few minutes' questioning of his daughters could do, but he does not contend that arrests of people with children are unconstitutional; brief questioning thus cannot be unconstitutional either. That the questioning took place out of the parents' presence does not change the analysis. Private questioning of witnesses reduces the risk that a suspect (such as David) would induce a witness to give untruthful answers. See *Davis v. Washington*, 547 U.S. 813, 830 (2006); cf. *White v. Markham*, 310 F.3d 989, 996 (7th Cir. 2002). Whether the police should respect parents' objections to questioning their children is a matter for wise police practice, and legislative decision, rather than constitutional-tort litigation under §1983.

This leaves David's contention that the police violated his privilege against self-incrimination when they questioned him without first delivering the warnings that *Miranda v. Arizona*, 384 U.S. 436 (1966), requires before custodial interrogation. One officer led David to his

garage, so that he could be questioned separately from Karen. It was in the garage that David admitted bumping Karen during the argument, an admission that led to his arrest. The district court resolved this issue on the basis of qualified immunity, ruling that a reasonable officer would not have understood that the questioning was "custodial." See *Beckwith v. United States*, 425 U.S. 341 (1976), which holds that questioning a person at home is not apt to be coercive, and thus is not "custodial," if the person has not been arrested. The officer did not place David under arrest until after he made his admission. Though David says that he thought himself in custody, the standard is objective.

It is unnecessary to decide whether the balance of objective indicators points toward a finding of "custodial interrogation," because the privilege against self-incrimination, and thus the *Miranda* doctrine, concerns the use of compelled statements in criminal prosecutions. Police cannot "violate *Miranda*," despite colloquial usage. The constitutional rule is the privilege; the *Miranda* warnings are designed to ensure that the privilege is not waived without understanding (and, if the suspect requests it, legal assistance). There's nothing wrong with compelling people to speak. It is done all the time through formal grants of immunity. See 18 U.S.C. §§ 6001–05. And the results of interrogation without *Miranda* warnings are admissible in civil cases, something that would be impossible if the interrogation itself violated the Constitution. See *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) (*Miranda* warnings not necessary in custodial interrogation if the ensuing statements are used in prison discipline rather than criminal prosecution).

We know from *Chavez v. Martinez*, 538 U.S. 760 (2003), that interrogation that yields incriminatory evidence never used in court does not support an award of damages. *Id*. at 766–70 (plurality opinion), 777–79 (Souter, J., concurring); *Sornberger v. Knoxville*, 434 F.3d 1006, 1024–25 (7th Cir. 2006) ("[a]fter *Chavez* . . . violation of the *Miranda* safeguards cannot provide the basis for §1983 liability without use of a suspect's statements against him in a 'criminal case.'"). See also *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1244 (7th Cir. 1990), reversed in part with respect to other issues, 509 U.S. 259 (1993). David does not contend that his statements were introduced into evidence in a criminal prosecution. There was no trial, and although he appeared in court twice—once to plead not guilty and once for a pretrial conference—he does not say that his statement was introduced into evidence on either occasion. See *Sornberger*, 434 F.3d at 1024 (concluding that any "courtroom use" of a statement derived from custodial interrogation is covered by the privilege and thus *Miranda*). Unless simply being arrested is enough to make the preceding interrogation unconstitutional, there is no problem. Yet an arrest does not entail the use of evidence *in* a criminal prosecution; the arrest precedes the prosecution. The police therefore did not violate David's privilege against self-incrimination, whether or not they should have given him *Miranda* warnings.

AFFIRMED