In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1757

PATRICK HAYDEN and MELISSA
HAYDEN, on behalf of their minor
child, A.H.,

*Plaintiffs-Appellants*,

*v.*

GREENSBURG COMMUNITY SCHOOL
CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-01709-RLY-DML — **Richard L. Young**, *Chief Judge*.

ARGUED OCTOBER 2, 2013 — DECIDED FEBRUARY 24, 2014

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. On behalf of their son, A.H., Patrick
and Melissa Hayden challenge a policy which requires boys
playing interscholastic basketball at the public high school in
Greensburg, Indiana, to keep their hair cut short. The Haydens

make two principal arguments: (1) the hair-length policy arbitrarily intrudes upon their son's liberty interest in choosing his own hair length, and thus violates his right to substantive due process, and (2) because the policy applies only to boys and not girls wishing to play basketball, the policy constitutes sex discrimination. The district court rejected both claims and granted judgment to the defendants. *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 2013 WL 1001947 (S.D. Ind. Mar. 13, 2013). We reverse in part. Because the hair-length policy on its face treats boys and girls differently, and because the record tells us nothing about any comparable grooming standards applied to girls playing basketball, the evidence entitles the Haydens to judgment on their sex discrimination claims.

## I.

A.H.'s home is in Greensburg, Indiana, a city of approximately 11,500 people in the south-central region of the state. The Greensburg Community School Corporation comprises an elementary school, a junior high school, and a senior high school, which combined have an enrollment of 2,290 students.

The board of trustees that establishes policy for the school district has adopted a provision—Policy 5511, entitled "Dress and Grooming"—which in relevant part directs the district superintendent to "establish such grooming guidelines as are necessary to promote discipline, maintain order, secure the safety of students, and provide a healthy environment conducive to academic purposes" (R. 81 at 3 ¶12); these guidelines are to include dress standards for members of school athletic

teams.[1] The district guidelines implementing this directive leave it to the individual principal of each school, in consultation with staff, parents, and/or students, to develop and enforce appropriate dress and grooming policies.

Greensburg Junior High School (which serves students in the sixth through eighth grades) has established an athletic code of conduct which includes the following provision regarding hair styles:

> **Hair Styles** which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete are not acceptable. Athletes may not wear haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted. Each varsity head coach will be responsible for determining acceptable length of hair for a particular sport. Ask a coach before trying out for a team if you have a question regarding hair styles.

R. 81 at 4 ¶15; R. 19 Ex. C. Although the record is silent as to the existence and content of a similar provision for athletes at the senior high school, we assume that there is such a provision, as it is undisputed that boys playing on the basketball teams at both the junior and senior high schools are subject to the same restriction on hair length. (When this litigation commenced in 2010, A.H. was enrolled at the junior high

---

[1] Although Policy 5511 expressly refers only to dress standards for school athletic teams, there is no dispute that it also authorizes the establishment of grooming standards for school athletes.

school, which likely explains why the parties omitted mention of a comparable senior high school policy.)

Stacy Meyer, the head varsity basketball coach at Greensburg High School, has established an unwritten hair-length policy which applies to the boys basketball teams. That policy provides that each player's hair must be cut above the ears, eyebrows, and collar. Coach Meyer has explained the policy as one that promotes team unity and projects a "clean cut"image. The boys baseball teams have a similar hair-length policy, whereas the boys track and football teams do not. No girls athletic team is subject to a hair-length policy. We are told that both boys and girls teams are subject to broader grooming policies (more on that below), but neither the briefs nor the record shed any light on the content of those policies.

A.H. is seventeen years old and currently is a junior in high school. He wishes to play basketball, but he also wishes to wear his hair longer than the hair-length policy permits. During the 2009–2010 school year, when he was in the seventh grade, A.H. cut his hair in compliance with the policy so that he could play for the junior high school boys team, but he "didn't feel like himself" with the short haircut. R. 81 at 6 ¶ 26. The following year, he declined to cut his hair and his parents protested the hair-length policy as unconstitutional. He was permitted to practice with the boys team while the school and district entertained the objection. But the school principal and district superintendent ultimately sustained the policy and, when A.H. refused to cut his hair, he was removed from the team. His maternal grandparents subsequently assumed guardianship of A.H. and he relocated to their school district—Northern Wells Community Schools in Ossian,

Indiana, in the northeastern portion of the state—in the hope that he would be permitted to play basketball without cutting his hair; but his new school did not permit him to play that year.

In the Fall of 2011, the guardianship was terminated and A.H. returned to Greensburg to begin his freshman year at Greensburg High School. He qualified for the freshman boys basketball squad and agreed to comply with the hair-length policy in order to play.

In the Fall of 2012, when A.H. again tried out for the boys team, his hair was longer than the hair-length policy allowed, and he was reminded that he would have to comply with the policy in order to practice with the team. Shortly thereafter, A.H. again took up residence with his maternal grandparents and attended Norwell High School in Ossian. He remains enrolled at Norwell High School to date, but his parents have indicated that they may allow him to return to Greensburg. A.H.'s intent, however, is to continue wearing his hair longer than the hair-length policy allows, and there is no question that this would disqualify him from playing on the boys basketball team.

After A.H. refused to cut his hair and was removed from the boys junior high school basketball team in the Fall of 2010, his parents sued the Greensburg Community School Corporation, its governing school board, and various district and school officials, alleging that the hair-length policy violated multiple state and federal constitutional and statutory provisions. After the district court denied the Haydens' request for preliminary injunctive relief barring enforcement of the policy,

*Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 2011 WL 2960267 (S.D. Ind. July 19, 2011), the parties filed cross-motions for summary judgment. Those motions were denied without prejudice after the parties agreed to submit the case to the district judge for final resolution on a set of stipulated facts. R. 75, 85. As we noted at the outset, the Haydens contended that the hair-length policy violated A.H.'s right to substantive due process and constituted impermissible sex discrimination.[2]

The court rejected the Haydens' substantive due process claim. The court acknowledged that one's choice of hairstyle is an element of liberty protected by the Fourteenth Amendment. 2013 WL 1001947, at *7 (citing, *inter alia*, *Holsapple v. Woods*, 500

---

[2] Although A.H., at the time of the district court's ruling, was attending Norwell and not Greenberg High School, the court found that the case was not moot. As the case history indicated, there was a real possibility that A.H. would return to Greensburg; and, given his announced intent to wear his hair longer than the policy permitted, there was also a concrete possibility that the same factual scenario underlying the Haydens' claims would repeat itself. At the same time, given the relative brevity of the basketball season (November through March), the court believed there would be insufficient time to fully litigate the merits of these claims if and when A.H. returned to Greensburg, tried out for, and was accepted to the boys basketball team. The court therefore saw the case as fitting within the exception to mootness for cases capable of repetition but evading review. 2013 WL 1001947, at *6–*7. *See, e.g., Crane by Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1319 (7th Cir. 1992). The court added that A.H. also had a claim for compensatory damages based on his involuntary removal from the junior high school boys basketball team in the Fall of 2010 pursuant to the hair-length policy. *Id.*, at *7.

For our purposes, the latter point is sufficient to resolve any concern about mootness. *See Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 915 (7th Cir. 2012).

F.2d 49, 51–52 (7th Cir. 1974) (per curiam)). But the court also recognized that public schools have the authority to enact and enforce dress and grooming policies. *Id.* (citing, *inter alia*, *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 394 (6th Cir. 2005)). Moreover, schools may condition participation in interscholastic sports upon a greater degree of regulation than that imposed on students generally, *id.* (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657, 115 S. Ct. 2386, 2393 (1995)). This court had made that very point in sustaining the constitutionality of a random drug testing regime imposed on interscholastic athletes, citing grooming codes as one example of the range of permissible regulations to which such athletes may be subject. *Id.* at *8 (citing *Schaill by Kross v. Tippecanoe Cnty. Sch. Corp.*, 864 F.2d 1309, 1318–19 & n.9 (7th Cir. 1988)). Implicitly rejecting the Haydens' contention that hairstyle is a fundamental right, the district court indicated that the Haydens bore the burden of showing that the hair-length policy is completely arbitrary and lacking any rational connection to a legitimate government interest. *Id.* The policy is not arbitrary, in the district court's view: it "is rationally related to the legitimate school interest of advancing an image of 'clean cut boys' and uniformity for sake of team unity." *Id.* (citing, *inter alia*, *Kelley v. Johnson*, 425 U.S. 238, 248–49, 96 S. Ct. 1440, 1446 (1976) (sustaining hair-length policy for male police officers)).

The court was no more persuaded that the hair-length policy constitutes sex discrimination in contravention of either the equal protection clause of the Fourteenth Amendment or Title IX of the Education Amendment Acts of 1972 (since renamed the Patsy Mink Equal Opportunity in Education Act), 20 U.S.C. § 1681(a). To establish an equal protection violation,

the court noted, the Haydens were required to show not only that the hair-length policy has a discriminatory effect but that it manifests a discriminatory intent, that is, an intent to treat A.H. differently because of his membership in a particular group (male athletes). 2013 WL 1001947, at *9–*10. The court believed that the Haydens had not offered evidence of discriminatory intent. Whereas the Haydens focused on the fact that "the mandatory haircut policy is not applied to any girl trying out for any sport," *id.* , at *9, what the court found relevant is that the policy applies only to some rather than all male athletes:

> The Haircut Policy applie[s] only to those male athletes who play[ ] basketball under Coach Meyer. It d[oes] not apply to male athletes who play[ ] sports other than basketball, such as football, track, or wrestling. Simply put, the Policy is not based on unlawful gender classifications.

*Id.*, at *10. The court found the Title IX claim doomed for the same reason. A private claim for damages under Title IX requires proof that the defendant intended to discriminate against the plaintiff on the basis of sex. *See id.* (citing *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008)). Because the hair-length policy did not apply to male athletes as a class, it did not, in the court's view, discriminate on the basis of sex. *Id.*

**II.**

A. Substantive Due Process

The Haydens contend that A.H. has a fundamental liberty interest in wearing his hair at the length of his choosing and that the hair-length policy, by compelling him to forgo that liberty and keep his hair short if he wishes to play interscholastic basketball at Greensburg High School, violates his Fourteenth Amendment right to substantive due process. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997) ("The [Due Process] Clause … provides heightened protection against government interference with certain fundamental rights and liberty interests.").[3] Officials bear a heavy burden of justification for curtailing a right that qualifies as fundamental. *See Reno v. Flores*, 507 U.S. 292, 301–02, 113 S. Ct. 1439, 1447 (1993) (infringement must be narrowly tailored to serve a compelling state interest) (collecting cases). The Haydens' contention that wearing one's hair in a length and style of one's choosing constitutes such a right is grounded in this court's decisions in *Breen v. Kahl*, 419 F.2d 1034, 1036 (7th Cir. 1969); *Crews v. Cloncs*, 432 F.2d 1259, 1263–64 (7th Cir. 1970); *Arnold v. Carpenter*, 459 F.2d 939, 941–42 (7th Cir. 1972); and *Holsapple v. Woods*, *supra*, 500 F.2d at 51–52. *Breen* held that "[t]he right to wear one's hair at any length and or in any desired manner is an ingredient of personal freedom protected by the United States constitution," and that "[t]o limit or curtail this or any other fundamental right, the state has a 'substantial

---

[3] The Haydens seek relief for the asserted violations of A.H.'s Fourteenth Amendment rights to due process and equal protection pursuant to 42 U.S.C. § 1983.

burden of justification.'" 419 F.2d at 1036 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 503, 85 S. Ct. 1678, 1692 (1965) (White, J., concurring)); *see also Crews*, 432 F.2d at 1263 ("In *Breen* we held that plaintiff's right was of a high order of importance.").

The notion that one's hair length is an aspect of personal liberty so important that it constitutes a fundamental right is hard to square with the Supreme Court's later opinion in *Glucksberg*, which describes fundamental rights as those which are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." 521 U.S. at 720–21, 117 S. Ct. at 2268 (internal quotation marks and citations omitted). The Court in *Glucksberg* noted that in addition to the freedoms expressly protected by the Bill of Rights, it had held the due process clause to protect such non-enumerated rights as "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* at 720, 117 S. Ct. at 2267 (citations omitted). The Court called for the "utmost care" in adding to this short list of fundamental rights, "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court." *Id.* at 720, 117 S. Ct. at 2268; *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992). Our post-*Glucksberg* cases have repeatedly taken note of, and heeded, this advice. *See, e.g., Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012); *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010); *Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 338–39 (7th Cir. 2010); *Brown v. City of Mich. City, Mich.*, 462 F.3d 720, 732–33 (7th Cir. 2006).

*Breen* and its progeny certainly remain valid for the proposition that the manner in which an individual wears his hair is a cognizable aspect of personal liberty; the Supreme Court itself assumed as much (without so deciding) in *Kelley v. Johnson*, *supra*, 425 U.S. at 244, 96 S. Ct. at 1444. *See Pence v. Rosenquist*, 573 F.2d 395, 399–400 & n.7 (7th Cir. 1978) (choice of appearance is an element of liberty subject to regulation which has rational relationship with legitimate public purpose); *see also Rathert v. Village of Peotone*, 903 F.2d 510, 514 (7th Cir. 1990). But there can be no doubt that the *Breen* line of cases has been circumscribed by *Glucksberg* to the extent *Breen* held that one's hair length implicates a fundamental right.

Although hair length is not a fundamental right, there is a residual substantive limit on government action which prohibits arbitrary deprivations of liberty by government. *See Glucksberg*, 521 U.S. at 728, 117 S. Ct. at 2271; *Flores*, 507 U.S. at 305, 113 S. Ct. at 1448–49; *Wroblewski v. City of Washburn*, 965 F.2d 452, 458 (7th Cir. 1992); *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir. 1983). Where a non-fundamental liberty—sometimes described as a "harmless liberty," *e.g.*, *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990)—is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest. *Glucksberg*, 521 U.S. at 728, 117 S. Ct. at 2271; *see also*, *e.g.*, *Goodpaster v. City of Indianapolis*, 2013 WL 6170623, at *5 (7th Cir. Nov. 25, 2013); *United States v. Moore*, 644 F.3d 553, 555–56 (7th Cir. 2011); *Greater Chicago Combine & Ctr., Inc. v. City of Chicago, Ill.*, 431 F.3d 1065, 1071 (7th Cir. 2005). This rational-basis variant of substantive due process differs little, if at all, from the most deferential form of equal protection

review. *Wroblewski*, 965 F.2d at 458; *Pence*, 573 F.2d at 398–99. *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (noting that rational-basis review which applies to all legislation differs from substantive due process); *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991) (noting that residual form of substantive due process may be a misnomer for rights expressly established by Constitution).

The Haydens have made no genuine attempt to demonstrate that the hair-length policy fails rational-basis review. In passing, they have suggested that the defendants have offered no evidence supporting the notion that uniformly short haircuts among members of the boys basketball team promote team unity, as Coach Meyer posited in defense of the policy. But the notion that the school must offer proof bearing out the logic of the policy misconceives the nature of rational-basis review. It is the Haydens who must demonstrate that the hair-length policy lacks a rational relationship with a legitimate government interest; it is not the school district's obligation to prove rationality with evidence. *See, e.g., Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (citing *Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006)). The Haydens' burden in this respect is a heavy one: So long as there is any conceivable state of facts that supports the policy, it passes muster under the due process clause; put another way, only if the policy is patently arbitrary would it fail. *E.g., F.C.C. v. Beach Commc'ns., Inc.*, 508 U.S. 307, 313–14, 113 S. Ct. 2096, 2101 (1993); *Wroblewski*, 965 F.3d at 458. Having made no effort in this regard, the Haydens have waived any argument that they might have made. *E.g., Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012). We therefore express no opinion on

whether the policy would survive rational basis review. Apart from that, it is not our place to pass judgment on the wisdom of the policy. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S. Ct. 562, 571 (1988); *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 270 (1968).

B. Equal Protection

A more meritorious contention is that the hair-length policy deprives A.H. of equal protection because it discriminates against him on the basis of his sex. Because A.H. is a boy, he must cut his hair in order to play interscholastic basketball at Greensburg; were he a girl, he would not be subject to that requirement, as the girls team has no hair-length policy. (All school athletes apparently are subject to the ban on hair styles that pose health, sanitation, or vision problems, display initials, numbers, or insignia, incorporate hair coloring, or are otherwise extreme in some way, but the hair-length policy is distinct from these restrictions.) The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75 (2000) (per curiam); *see also, e.g.*, *Nabozny v. Podlesny*, 92 F.3d 446, 453–56 (7th Cir. 1996) (applying equal protection clause in school context). Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive. *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 2275 (1996).

Whether and when the adoption of differential grooming standards for males and females amounts to sex discrimination

is the subject of a discrete subset of judicial and scholarly analysis. This line of authority—much of it pre-dating the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51, 109 S. Ct. 1775, 1790–91 (1989) (plurality) (employer may not demand that employee's appearance and deportment match sex stereotype associated with her gender)—is most developed in the employment context, but it has a parallel in the school context as well. *See*, *e.g.*, *Carroll v. Talman Fed. Sav. & Loan Ass'n of Chicago*, 604 F.2d 1028 (7th Cir. 1979) (holding that workplace dress code which required women but not men to wear uniforms constituted sex discrimination in violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)); *id.* at 1032 ("So long as [personal appearance regulations] find some justification in commonly accepted social norms and are reasonably related to the employer's business needs, such regulations are not necessarily violations of Title VII even though the standards differ somewhat for men and women."); *Jespersen v. Harrah's Op'g Co.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (majority) (sustaining make-up requirement for female employees in absence of objective evidence that such requirement imposed unequal burden on women) ("We have long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits. The material issue under our settled law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an 'unequal burden' for the plaintiff's gender.") (citations omitted); *id.* at 1115–16 (Pregerson, J., dissenting) (contending that make-up requirement constituted the sort of impermissible sex-stereotyping proscribed by *Price Water-*

*house*); *id.* at 1117 (Kozinski, J., dissenting) (contending that because make-up requirement had no genuine equivalent in grooming standards for male workers, question of fact presented as to whether standards imposed unequal burdens on men and women); *Barker v. Taft Broadcasting Co.*, 549 F.2d 400, 401 (6th Cir. 1977) (grooming standards imposing different limitations on hair length and style for male and female employees did not constitute sex discrimination absent allegation that standards were subject to unequal enforcement between the sexes); *Earwood v. Continental Se. Lines, Inc.*, 539 F.2d 1349, 1350 (4th Cir. 1976) ("sex-differentiated grooming standards do not, without more, constitute discrimination under Title VII of the Civil Rights Act of 1964"); *Knott v. Missouri Pac. R. Co.*, 527 F.2d 1249, 1252 (8th Cir. 1975) ("Defendant's hair length requirement for male employees is part of a comprehensive personal grooming code applicable to all employees. While no hair length restriction is applicable to females, all employees must conform to certain standards of dress. Where, as here, such policies are reasonable and are imposed in an evenhanded manner on all employees, slight differences in the appearance requirements for males and females have only a negligible effect on employment opportunities."); *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975) (en banc) ("It does not appear that defendant fails to impose grooming standards for female employees; thus in this respect each sex is treated equally. … [B]oth sexes are being screened with respect to a neutral factor, i.e. grooming in accordance with generally accepted community standards of dress and appearance.") (internal quotation marks and citations omitted); *Dodge v. Giant Food, Inc.*, 488 F.2d 1333, 1337

(D.C. Cir. 1973) (grooming regulations that prohibited men from wearing long hair and required women with long hair to secure it did not constitute sex discrimination violating Title VII: "Giant enforces strict grooming regulations against both male and female employees."); *Harper v. Edgewood Bd. of Educ.*, 655 F. Supp. 1353, 1356 (S.D. Oh. 1987) (school did not violate students' equal protection rights by enforcing school board's dress regulations and prohibiting students from attending school prom dressed in clothing of opposite sex; school dress code did not differentiate based on sex but required students to dress in conformance with community standards); *Johnson v. Joint Sch. Dist. No. 60, Bingham Cnty.*, 508 P.2d 547, 548–49 (Idaho 1973) (school dress code that prohibited female students from wearing slacks, pantsuits, or culottes impermissibly discriminated on the basis of sex); *Scott v. Bd. of Educ., Union Free Sch. Dist. No. 17, Hicksville*, 305 N.Y.S.2d 601, 606–07 (N.Y. Sup. 1969) (similarly finding invalid provision of school dress regulations prohibiting girls from wearing slacks except with permission of principal when warranted by cold weather); Jeremiah R. Newhall, *Sex-Based Dress Codes and Equal Protection in Public Schools*, 12 Appalachian J. Law 209 (2013); Jennifer L. Greenblatt, *Using the Equal Protection Clause Post-*VMI *to Keep Gender Stereotypes Out of the Public School Dress Code Equation*, 13 U.C. Davis J. Juvenile Law & Policy 281 (2009). Whether and to what extent these cases survive *Price Waterhouse* is a question that we have not yet had occasion to address. The Ninth Circuit has concluded that sex-differentiated grooming standards remain permissible after *Price Waterhouse*, *see Jespersen*, 444 F.3d at 1109–12; *Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864, 875 n.7 (9th Cir. 2001), although it has

left the door open to proof that some sex-specific standards may be the product of impermissible sex-stereotyping, *Jespersen*, 444 F.3d at 1113. But we may assume, without deciding, that this line of authority remains mostly if not wholly unmodified by *Price Waterhouse*. The relevant and dispositive point here is that this line of precedent has been ignored entirely in this appeal.

The parties have litigated the hair-length policy in isolation rather than as an aspect of any broader grooming standards applied to boys and girls basketball teams. We were told, when we raised the subject at oral argument, that male and female athletes alike are subject to grooming standards; and indeed the parties jointly stipulated below for purposes of the preliminary injunction hearing that whereas only the boys basketball and baseball teams have hair-length policies, the other school athletic teams do have grooming policies. R. 34. But the content of those grooming policies has never been established, and the fact that there *are* grooming standards for both girls and boys teams was not even mentioned in the stipulated facts submitted to the district court for purposes of resolving the case. The stipulated facts reveal only that there is a hair-length policy for the boys basketball team but for not for the girls basketball team (or, for that matter, any other girls team). As such, the stipulated facts indicate that a boy wishing to play basketball at Greensburg is subject to a requirement, impinging upon a recognized liberty interest, that a girl is not.

The defendants argue that this is not sex-based discrimination because the hair-length policy applies to only two of the boys athletic teams. Boys wishing to compete on the football or track teams, for example, would be free to do so without

having to keep their hair cut short. As the defendants apparently see it, the fact that the policy does not apply to all boys teams demonstrates that the policy does not categorically discriminate against boys. The district court agreed.

The argument is untenable. That the policy is not universally applied to boys does not negate the fact that it is based on sex: Again, boys wishing to play basketball (or baseball) are subject to a requirement that girls are not. The fact that other boys playing other sports are not burdened by that requirement is neither here nor there. The equal protection clause protects the individual rather than the group, and the individual plaintiff in this case wishes to play basketball. *See Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1187 (7th Cir. 1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605 (1970)); *see also Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 597, 128 S. Ct. 2146, 2150 (2008); *Batson v. Kentucky*, 476 U.S. 79, 95–96, 106 S. Ct. 1712, 1722 (1986); *Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S. Ct. 836, 846 (1948). He is subject to a burden that a girl in the same position is not.

Equally problematic is the school district's alternative contention that the sex discrimination claim fails for lack of proof that any such discrimination is intentional. *See, e.g., Nabozny*, 92 F.3d at 454. This is a case of disparate treatment rather than disparate impact; the hair-length policy, being applicable only to boys teams, draws an explicit gender line. The intent to treat boys differently from girls is therefore evident from the one-sided nature of the policy. *See Parker v. Franklin Cnty. Cmty. Sch. Corp., supra* n.2, 667 F.3d at 920 (citing, *inter alia, Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 694 (6th Cir. 2006)); *cf. UAW v. Johnson*

*Controls, Inc.*, 499 U.S. 187, 199, 111 S. Ct. 1196, 1203–04 (1991) ("the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect").

Had this case been resolved on a defense motion for summary judgment (without the parties' agreement to submit the case to the court for final judgment based on stipulated facts) our course would be clear: remand the case for further proceedings on the question of liability. Our rejection of the two rationales that the district court relied upon in rejecting the Haydens' equal protection claim would not foreclose the defendants from pursuing alternative arguments for judgment in their favor. In that scenario, the defendants might yet have the opportunity to make an argument they have not made here—namely, that a hair-length policy that applies only to male athletes, but which is just one component of a set of grooming standards that impose comparable, although not identical, responsibilities on male and female athletes, does not constitute sex discrimination. The merits of such an argument are not for us to predict. The argument has not been made on appeal and, save for a one-sentence footnote in a motion to dismiss, R. 19 at 22 n.6, was not made below. We note it merely to make the point that we are neither speaking to that argument here nor foretelling the result in a case in which it is properly asserted and developed.

The problem for the defendants is that this case was jointly submitted to the district court for *final* judgment based on a set of stipulated facts. Those facts, if they are read to include the parties' prior stipulation that both male and female athletes are subject to grooming standards, reveal nothing that would

permit a court to assess whether the standards are comparable, notwithstanding the disparity in the hair-length component of the grooming standards.

The Haydens plainly have made out a prima facie case of discrimination. The hair-length policy applies only to male athletes, and there is no facially apparent reason why that should be so. Girls playing interscholastic basketball have the same need as boys do to keep their hair out of their eyes, to subordinate individuality to team unity, and to project a positive image. Why, then, must only members of the boys team wear their hair short? Given the obvious disparity, the policy itself gives rise to an inference of discrimination. To defeat that inference, it was up to the school district to show that the hair-length policy is just one component of a comprehensive grooming code that imposes comparable although not identical demands on both male and female athletes. In the face of such evidence, the parties might cross swords on such questions as whether community norms dictate separate grooming standards, whether the burdens imposed by those standards on boys and girls are indeed comparable, whether the respective grooming standards are enforced equally, and, irrespective of comparability and even-handedness, whether a sex-specific grooming standard like the hair-length policy is compatible with *Price Waterhouse*. But absent any evidence as to the content of the grooming standards that are applicable to female athletes, we are not prepared to simply assume that an otherwise facially-discriminatory rule is justified.

The dissent looks to the parties' stipulation that there are grooming standards for all teams, coupled with the hair-style provision of the athletic code of conduct, quoted *supra* at 3, as

proof that male and female athletes are in fact subject to comparable grooming standards. *Post* at 32–34, 36–37. Yet, the mere stipulation that there *are* grooming standards applicable to girls as well as boys teams does not establish the content of those standards. Nor does the hair-style provision fill that void. That provision proscribes hair styles "which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete"; and it goes on to cite a variety of specific methods of wearing or styling one's hair that are forbidden to all athletes, including hair coloring, Mohawks, and cuts that display insignia, numbers, initials, or the like. R. 81 at 4 ¶ 15; R. 19 Ex. C. If this is the sum total of the broader grooming code applicable to both male and female athletes referenced by the parties' stipulation, the parties themselves have not identified it as such in their supplemental submissions to the court. Nor is it obvious to us that it is, as this provision merely declares certain extreme hairstyles to be off-limits (and no one is suggesting that A.H.'s preferred hairstyle would run afoul of these prohibitions). Beyond that, the policy delegates to each varsity head coach the responsibility to determine "acceptable" hair lengths for his or her respective sport, which does not explain why short hair may be thought necessary for boys who play basketball but not girls.

The fact is, beyond the outer limits articulated in the hair-style provision, we know virtually nothing about the grooming standards to which female athletes at Greensburg are subject. May they wear earrings or other types of jewelry, for example, and if so, what if any restrictions are imposed on these items? If the goal for all interscholastic athletes is a neat, clean-cut appearance, which is one of the reasons that Coach Meyer gave

for the hair-length policy, are girls required to maintain their hair to particular standards? Beyond the limits on mohawks and other extreme hairdos set forth in the hair-style provision, are there any limits on the manner in which girls may style their hair? Although girls can evidently wear their hair as *long* as they wish, could a female basketball player wear her hair in an extremely short "buzz-cut," which might literally qualify as "clean cut" but perhaps not in the sense that Coach Meyer means it and perhaps not in synch with local norms? Surely girls with longer hair must do something to keep their hair out of their eyes while playing basketball, as the dissent points out. *Post* at 33 n.2. But, at the risk of stating the obvious, boys with longer hair could do the same. In fact, male athletes use head and hair bands to do this very thing, as anyone who has watched professional basketball or football games recently can confirm.

Which brings us to community standards. As discussed, a principle that emerges from the Title VII and other cases we have cited is that sex-differentiated standards consistent with community norms may be permissible to the extent they are part of a comprehensive, evenly-enforced grooming code that imposes comparable burdens on both males and females alike. As our colleague's dissent points out, some of the cases in that line sustained workplace hair-length restrictions on male but not female employees. *Post* at 33 (citing *Barker*, 549 F.2d at 401, *Knott*, 527 F.2d at 1250, and *Willingham*, 507 F.2d at 1087, 1092). We would reiterate that each of those cases relied on the fact that female employees, although not subject to hair-length restrictions, were subject to comparable grooming require-

ments.[4] It is possible that we might reach the same conclusion here, were the record more developed as to the broader set of grooming rules applicable to both male and female athletes. But it is worth noting that the community standards which may account for the differences in standards applied to men and women, girls and boys, do not remain fixed in perpetuity. *See Jespersen*, 444 F.3d at 1118 (Kozinski, J., dissenting). It is also worth reiterating that Coach Meyer's policy prohibits far more than an Age-of-Aquarius, Tiny-Tim, hair-crawling-past-the-shoulders sort of hair style—it compels all male basketball players to wear genuinely short hair. In 2014, it is not obvious that any and all hair worn over the ears, collar, or eyebrows would be out of the mainstream among males in the Greensburg community at large, among the student body, or among school athletes. (Even one or two men on this court might find themselves in trouble with Coach Meyer for hair over the ears.) We certainly agree that the pedagogical and caretaking responsibilities of schools give school officials substantial leeway in establishing grooming codes for their students generally and for their interscholastic athletes in particular. *See post* at 30–31. But that leeway does not permit them to impose

---

[4] *See Barker*, 549 F.2d at 401 (male employees were subject to hair-*length* restrictions whereas female employees were subject to hair-*style* restrictions; no indication the restrictions were enforced unevenly as between the sexes); *Knott*, 527 F.2d at 1249–50, 1252 (although employer only restricted hair length and styles of male employees, separate written grooming standards, which were evenly enforced, required employees of both sexes to conform to certain styles of dress); *Willingham*, 507 F.2d at 1087 (grooming code required both male and female emplo6yees who came into contact with public to be neatly dressed and groomed in accordance with standards customarily accepted in the business community).

non-equivalent burdens on school athletes based on their sex. So far as this record reveals, that is exactly what the school district has done; and this is the essence of the sex-discrimination claim that the Haydens have been making from the beginning of this case.

What we have before us is a policy that draws an explicit distinction between male and female athletes and imposes a burden on male athletes alone, and a limited record that does not supply a legally sufficient justification for the sex-based classification. We know that there is a rule prohibiting both male and female athletes at the junior high school from wearing hairstyles that might in some way interfere with their vision or pose some other type of problem; we have assumed that the same rule applies to high school athletes of both sexes. But there is no suggestion that A.H. wishes to wear his hair in an extreme fashion, let alone that hair worn over a boy's ears or collar or eyebrows is invariably problematic. The record also tells us that Coach Meyer offered two reasons for the policy: promoting team unity, by having team members wear their hair in a uniform length, and projecting a "clean-cut" image. We may assume that the hair-length rule is consistent with these reasons and that both reasons are legitimate grounds for grooming standards that apply to interscholastic athletes. What is noteworthy, for purposes of the Haydens' equal protection claim, is that the interests in team unity and projecting a favorable image are not unique to male interscholastic teams, and yet, so far as the record reveals, those interests are articulated and pursued solely with respect to members of the boys basketball team (and baseball team, assuming that the hair-length rule is applied to that team for the same reasons). If

there is an argument that the goals of team unity and a "clean-cut" image are served through comparable, albeit different, grooming standards for female athletes, it has neither been advanced nor supported in this case. And the fact that other boys teams are not subject to a hair-length policy casts doubt on whether such an argument could be made.

The parties consented to the entry of final judgment on the record as it stands, and that record entitles the Haydens to judgment on the equal protection claim. The policy imposes a burden on only male athletes. There has been no showing that it does so pursuant to grooming standards for both male and female athletes that, although not identical, are comparable. Finally, no rational, let alone exceedingly persuasive, justification has been articulated for restricting the hair length of male athletes alone.

C.  Title IX

Section 901(a) of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance … ." 20 U.S.C. § 1681(a). There is no dispute that the Greensburg school district receives federal funds and that the district, including its interscholastic athletic programs, is subject to the Title IX's ban on sex discrimination. *See Parker*, 667 F.3d at 917–18. Violations of the statute are subject to a private suit for both equitable relief and damages. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717, 99 S. Ct. 1946, 1968 (1979); *Franklin v. Gwinnet Cnty. Pub. Schs.*, 503 U.S. 60, 75–76, 112 S. Ct. 1028, 1038 (1992).

The Haydens are entitled to judgment on their Title IX claim for the same reasons we have already discussed with respect to the equal protection claim. As noted, the district court disposed of this claim for want of proof that the district harbored any intent to discriminate on the basis of sex: Because the hair-length policy did not apply to all male athletes, the district court did not view it as sex discrimination at all. 2013 WL 1001947, at *10. We have disposed of that rationale already: The hair-length policy is applied only to the boys team, with no evidence concerning the content of any comparable grooming standards applied to the girls team. The discrimination must also be intentional in order to support a claim for damages under Title IX. *E.g.*, *Smith v. Metro. Sch. Dist. Perry Tp.*, 128 F.3d 1014, 1028 (7th Cir. 1997); *see also Parker*, 667 F.3d at 921–22. We have covered that point already as well. The district court said that Title IX requires proof that the defendant was deliberately indifferent to a known act of sex discrimination. 2013 WL 1001947, at *10. That is one way to establish intent, typically where a school district has been sued for sexual harassment of a student by one of its teachers. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91, 118 S. Ct. 1989, 1999 (1989). The discrimination at issue here takes the form of a school policy. The policy was instigated by Coach Meyer, but he did so pursuant to the authority expressly delegated to him and other varsity coaches to set hair standards for their respective sports. Lest there by any question that his policy was the district's, when Mrs. Hayden protested the policy up through the district's chain of command, the policy was sustained and remained in place unmodified. The intent to

discriminate is thus attributable to the school district. *See Parker*, 667 F.3d at 921–922.

### III.

For the reasons discussed in this opinion, the district court's judgment in favor of the defendants on the Haydens' substantive due process claim is affirmed. However, the judgment in favor of the defendants on the equal protection and Title IX claims is reversed. On the record presented to us, the Haydens have established that the hair-length policy applicable to boys wishing to play basketball impermissibly discriminates based on sex. The case is remanded to the district court to determine appropriate relief on these claims. The parties shall bear their own costs of appeal.

AFFIRMED IN PART, REVERSED IN PART,
and REMANDED.

MANION, *Circuit Judge*, concurring in part and dissenting in part.

Having ruled against A.H.'s primary argument, the court decides this case on equal protection arguments that A.H. did not make, rooted in authority he did not cite. However, the court does not actually tell us why the policies here are not comparable under the correct standard. Rather, the court decides that the school loses by default because the record is missing *some* of the grooming provisions that are applicable to female athletes. But there is enough in the record to compare the grooming policies applicable to male and female athletes, and if anything that is missing were included, it would only make the burden of the grooming policy applicable to male athletes even more clearly balanced out by the burden on female athletes. Although I agree with the court's general summary of the law of equal protection, I write separately because the record does not establish any violation of the Equal Protection clause or Title IX.

Imitating a policy established by the celebrated Hoosier and legendary basketball coach John Wooden, Coach Meyer insists that the boys on the Greensburg basketball team cut their hair shorter than A.H. prefers to cut his hair. R. 77 at 10–11 ¶ 47 and n.4. Meyer hopes that this policy will promote team unity and at the same time project a clean-cut image, but A.H. doesn't "feel like himself" with a shorter haircut. R. 81 at 6 ¶ 26. The policy of the Greensburg school board allows the coach of each team to determine any limitation on his players' hair length, and according to the parties' stipulation, Meyer and the baseball coach are the only coaches at Greensburg who impose haircut requirements. *See id.* at 5 ¶ 22. A.H. refuses to be

compared to the male athletes in other sports who do not have to cut their hair. Rather, because the members of the Greensburg girls basketball team do not have to cut their hair, A.H. claims he is being discriminated against because of his sex.

As the court recognizes, sex-based equal protection analysis is much more nuanced than a simple "but for" test. *See* Maj. Op. at 13–14. Discrimination based on sex violates the Equal Protection clause unless the state has an exceedingly persuasive justification. *United States v. Virginia*, 518 U.S. 515, 533 (1996). However, maintaining different grooming standards for men and women is not usually discrimination. As the court points out, there is a line of authority which addresses differing grooming standards for men and women in the workplace. Maj. Op. at 14–17. From that line of authority, a rule emerges that differing grooming standards are not discrimination if they are comparable; for the standards to be comparable, they must "find some justification in commonly accepted social norms" or "generally accepted community standards," be reasonably related to a legitimate interest, and be applied evenhandedly, not imposing an unequal burden. *Id.* (citing *Carroll v. Talman Fed. Sav. & Loan Ass'n of Chi.*, 604 F.2d 1028, 1032 (7th Cir. 1979); *Barker v. Taft Broad. Co.*, 549 F.2d 400, 401 (6th Cir. 1977); *Earwood v. Cont'l Se. Lines, Inc.*, 539 F.2d 1349, 1350 (4th Cir. 1976); *Knott v. Mo. Pac. R. Co.*, 527 F.2d 1249, 1252 (8th Cir. 1975); *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975) (en banc); *Dodge v. Giant Food, Inc.*, 488 F.2d 1333, 1337 (D.C. Cir. 1973)). The rationale for this workplace rule is simple: requiring everyone to "look professional" (or any other appearance goal) may mean different things for men

and women because of "common differences in customary dress." *Carroll*, 604 F.2d at 1032 (citing *Fagan v. Nat'l Cash Register Co.*, 481 F.2d 1115, 1117 n.3 (D.C. Cir. 1973)).

Consistently with the rule, we have held that enforcing materially different dress codes based on different interests—such as requiring that men wear business attire but women wear uniforms (so both look professional, but women avoid "dress competition")—was sex discrimination. *Carroll*, 604 F.2d at 1032–33. But an evenhanded dress code—like a ban on wearing clothing that societal standards say belongs to the opposite sex—has been upheld. Maj. Op. at 16 (citing *Harper v. Edgewood Bd. of Educ.*, 655 F. Supp. 1353, 1356 (S.D. Ohio 1987)). Most pertinently, courts have routinely upheld generally applicable grooming policies containing hair-length requirements for men but not for women. *Id.* at 15–16 (citing *Barker*, 549 F.2d at 401; *Knott*, 527 F.2d at 1252; *Willingham*, 507 F.2d at 1092; *Dodge*, 488 F.2d at 1337).

Further, the decisions cited above predominately concern Title VII—equal protection in the workplace. Those decisions seem to apply reasonably to disputes involving students in a school setting (which might comparatively be called the workplace for students), but we are now testing the decisions in the unique context of high school athletics. Under Title IX, the interests and factual realities are different from an ordinary workplace. Notably, this court has found the different interests significant enough to permit a "separate but equal" scheme in high school athletics, something that would not be tolerated in almost any workplace. *See O'Connor v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578, 581 (7th Cir. 1981). Boys and girls play on separate teams for the obvious reason that, after age 12 or 13,

the average male is bigger, taller, stronger, and faster than the average female competing in the same sport and age level. *See id.* at 581. Separation by gender is necessary and beneficial. Sometimes there isn't even overlap—there are no girls football teams, nor are there boys gymnastics or volleyball teams in Indiana.[1] The requirement is equal athletic opportunity. *See id.* at 582 (discussing equal opportunity in the context of separate boys and girls basketball teams). Extracurricular athletic opportunity is offered amidst many practical, pedagogical, and biological considerations in addition to those "social norms" and "community standards" that Title VII decisions have accepted as legitimate, nondiscriminatory distinctions.

With this context, the grooming decisions reveal a common thread: as long as a grooming or appearance policy applies to both men and women, the fact that it has different provisions based on different social norms or community standards for men and women (or based on different athletic traditions) is acceptable. Distinction is not discrimination. The court and I agree that the rule permits a policy that is different for men and women so long as it is comparable.

However, I disagree with the court on whether the record is sufficient for us to apply the rule to the policy in this case. The court states that the facts of the record "reveal nothing that would permit a court to assess whether the standards are comparable, notwithstanding the disparity in the hair-length

---

[1] Even the sports that overlap have differences: a girls' basketball is smaller than a boys' basketball and a softball is bigger than a baseball—and despite the similarities of the sports, girls softball teams often wear shorts while boys baseball teams must always wear baseball pants.

component of the grooming standards." Maj. Op. at 20. Therefore, the court concludes that the record requires judgment in A.H.'s favor. I disagree for two reasons.

First, the record *is* sufficient for us to compare the policies. One of the stipulations submitted to the district court was that the school had an "Athletic Code [that] contains a specific section on grooming with a 'hair style' provision that provides":

> Hair Styles which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete are not acceptable. Athletes may not wear haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted. Each varsity head coach will be responsible for determining acceptable length of hair for a particular sport. Ask a coach before trying out for a team if you have a question regarding hair styles.

R. 81 at 4 ¶15; R. 19 Ex. C. This is the policy that applies to junior-high athletes of both sexes. I agree with the court that we should assume it is the same for senior-high athletes, Maj. Op. at 3, especially in light of the stipulation that counsel brought to our attention after oral argument: "No other Greensburg sports teams [besides the boys basketball and baseball teams] have policies governing hair length, *but do have grooming policies*." R. 34 (emphasis added); *see also* R. 81 at 5 ¶ 22 (stipulating that girls do not have to abide by the haircut limitation). Accordingly, the record indicates that the policies

for the boys and girls basketball teams are the *same* except for hair length. Only the hair length component is delegated to the coaches, and the stipulation indicates that only the boys baseball and basketball teams have imposed a hair-length requirement.[2] This kind of policy is permitted. *See Barker*, 549 F.2d at 401 (approving generally applicable grooming policy that required only men to cut their hair); *Knott*, 527 F.2d at 1250, 1252 (approving similar policy again requiring only men to cut their hair, but also imposing hair *style* policy on men alone); *Willingham*, 507 F.2d at 1087, 1092 (also approving a policy that prohibited only men from wearing long hair); *Dodge*, 488 F.2d at 1337 (same). On the record we have, the grooming policies for boys and girls, as a whole, are comparable. Requiring men, but not women, to keep their hair at a certain length has never been held to be unequally burdensome. Further, there is no evidence (or argument) that the policies fail for other reasons; for example, there is no evidence

---

[2] It is no surprise that there is no hair-length requirement for the girls. Female athletes usually compete with their hair worn up in a ponytail, bun, or "knot top" so that it does not obstruct their vision or get snagged or tangled during encounters such as scrambling for a loose ball or a rebound. (A.H. does not allege a failure to evenhandedly enforce on the girls team the requirement that hairstyles permit unobstructed vision). Unsurprisingly, the National Federation of State High School Associations ("NFHS") Basketball rules—which Greensburg, as a member of the Indiana High School Athletics Association, follows—anticipate the reality of hair being worn up by providing that "[r]ubber, cloth or elastic bands may be used to control hair." But "[h]ard items, including but not limited to, beads, barrettes and bobby pins, are prohibited." *2012-13 NFHS Basketball Rules Book*, NFHS (2012), Rule 3-5, Art. 4, d. at 25 (previous editions have the same rule).

that the distinctions are ungrounded in social norms or community standards or are arbitrary, nor is there evidence that the policies are not evenhandedly applied. Absent such proof, the otherwise comparable policies do not amount to sex discrimination. *Carroll*, 604 F.2d at 1032 (discussing these additional factors in finding sex discrimination).

Second, I disagree with the court's imposition of an inappropriate burden on the school. I agree that once A.H. has made a *prima facie* case of discrimination by showing the different rule applicable to boys, the school had the burden to produce its contested policies to permit the court to assess whether they are comparable. Maj. Op. at 20; *see, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). But I disagree about how much production is enough to enable us to compare the policies. The court suggests that "it was up to the school district to show that the hair-length policy is just one component of a comprehensive grooming code." Very well. The school and A.H. have stipulated that the hair style rules are just one part of a comprehensive grooming and dress code applicable to boys and girls. R. 81 at 3–4, ¶¶ 12–15. Still, the court says we are lacking the "content of the grooming standards that are applicable to female athletes." Maj. Op. at 20. But A.H.'s only argument—only allegation—is that the hair length standard is unfair, and the school has produced the hair style provision of the athletic code, and the coaches' decisions that the boys basketball team has to cut its hair to a certain length and the girls basketball team does not (the only decisions delegated to the coaches). Yet the court says the school has not produced enough, while leaving the school guessing about what is enough content. Must the school produce every

provision tangentially related to female grooming? Perhaps it would have been better had the school done this. But the only thing the content of any other female grooming provision could provide is evidence of more burdens for female athletes, which would make the policies more comparable. The omission of any grooming provisions applicable to female athletes is, at worst, immaterial.[3]

With enough of the policy to compare, the school's burden to produce is satisfied and we continue with the normal routine. The burden of persuasion rests always with the plaintiff, who must now show that a comparison of the policies reveals disparities that amount to sex discrimination. If he does so, then it is the school's burden to prove a justification. *See Virginia*, 518 U.S. at 533; *Dodge*, 488 F.2d at 1335 ("It must first be determined that a discrimination on the basis of sex has occurred. If there is no sex discrimination, the inquiry ends. However, if the court concludes that an employer has discriminated on the basis of sex *then* it is the employer's burden … .") (emphasis added). The fact that the school did not produce *more* of the grooming provisions applicable to girls just makes A.H.'s job easier—as Judge Easterbrook noted at oral argument, we should presume there are no other provisions applicable to girls, the best possible assumption from A.H.'s

---

[3] Further, when deciding a case with as wide-ranging implications as this one—especially when the most recent precedents are thirty years old—we should be very reluctant to decide the case on the absence of some provisions applicable to girls. What is "comparable" is only made more murky by the court's opinion, when it could easily give a clear explanation if it would only expand the record to get what it thinks is missing, which it may do. *See* Fed. R. App. P. 10(e).

perspective. Oral Arg. at 16:44. But it is still A.H.'s burden to prove that the policies are not comparable. Even with the benefit of our presuming there are no additional burdens on female athletes, A.H. has not met his burden. Merely pointing to the fact that one component is different in an otherwise equally burdensome grooming policy for boys and girls is insufficient to prove that the policy is unduly burdensome for boys, and therefore discriminatory. *See Barker*, 549 F.2d at 401 (dismissing a complaint alleging that an "employer maintained a grooming code for men and women employees which limited the manner in which the hair of the men could be cut and limited the manner in which the hair of women could be styled" as insufficient to amount to discrimination); *Knott*, 527 F.2d at 1250 (holding that a hair-length policy applicable only to men when "[n]o similar regulation restricts the hair length *or hair style* of female employees" was not sex discrimination) (emphasis added); *Willingham*, 507 F.2d at 1087, 1092 (holding that a policy imposing a hair-length restriction on men alone was not sex-based discrimination).

The stipulations in this case indicate that there is an athletic "hair style" policy that applies to both male and female athletes, with a "cut" requirement that applies only to (some) male athletes (and there may be other provisions applicable to female athletes, but we assume there are not to A.H.'s favor). Even with *no* additional grooming provisions applicable to female athletes, and therefore *no* additional burdens on females athletes (besides the athletic code's hairstyle provision), the policies are comparably burdensome. *Knott*, 527 F.2d at 1250 (holding that a policy was not discrimination where "[n]o similar regulation restricts the hair length or hair style of

female employees, but both male and female employees must conform to certain standards of dress"—exactly the scenario stipulated to here). To the extent the policy in this case is distinguishable from the policies in *Barker* and *Knott* (and the other employment decisions) it is only because there should be more flexibility accorded the school administrators and coaches in the school athletics environment, especially given the hair-cut policy's relation to athletic culture. The policies here are not sex-based discrimination, just like those in *Barker* and *Knott* were not.

A.H. could have argued that the policies are ungrounded in social norms, irrational, or not enforced evenhandedly. In fact, the court suggests that very short hair might no longer be grounded in social norms for male athletes. Maj. Op. at 23–24. But we have explicitly adopted a more deferential review of such questions. *Carroll*, 604 F.2d at 1032 (stating that "[s]o long as [appearance regulations] find *some justification* in commonly accepted social norms and are reasonably related to the employer's business needs" they are not usually sex discrimination (emphasis added)). And besides, these types of arguments—ones which are external to the text of the policy—are things for which A.H. would have the burden to offer evidence, or at least make argument. *Barker*, 549 F.2d at 401 ("There is no allegation that women employees who failed to comply with the code provisions relating to hair style were not discharged. Nor is there any allegation that the employer refused to hire men who did not comply with the code, but did hire women who were not in compliance. We conclude that the complaint does not state a cause of action under Title VII for discrimination on the basis of sex within the traditional

meaning of that term."). But A.H. has not done so. Any win-by-failure-of-the-record regarding the enforcement or rationality of the policy must go to the school.

As a final note, the court mentions that the interests underlying the haircut component of the grooming policy—"clean-cut" appearance, team unity and uniformity—are equally applicable, but not "articulated or pursued" with respect to the girls teams (and the other boys teams). This is incorrect. The policy applicable to all boys and girls forbids "haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted" (requirements which A.H. points out that he complies with). All these prohibitions are at least partly grounded in the interests in team unity, uniformity, and a "clean-cut" appearance. The simple fact is that those interests may often manifest themselves in details that differ between boys and girls and among different sports. And again, proving that a difference in how an interest is manifested is ungrounded in social norms or community standards, is arbitrary, is unequally burdensome, or is not evenhandedly applied is A.H.'s burden—one that he has not met.

The main controversy throughout this case, both below and on appeal, has been whether there is a fundamental right to choose the length of one's hair. I agree with the court that there is not, so a student challenging a school rule regarding hair length bears the burden of proving it is not rationally related to a legitimate state interest—something A.H. has not done. We could and should end there and affirm. As the court acknowledges, both sides have completely ignored the applicable line of equal protection precedent. Maj. Op. at 17.

However, if we do address equal protection on the current record of stipulations, we should still affirm. The parties have stipulated that a grooming policy applies to both boys and girls. They have supplied an example in the junior-high grooming policy, which is identical for boys and girls. A.H. has only pointed out a single difference—hair length—which precedent says is a legitimate, nondiscriminatory distinction. A.H. has only argued that the policies are not identical, but that is not enough. On the record we have, A.H. cannot meet the burden of proving an argument he has not made—that the policies are not comparable. Based on the stipulations, the policies are comparable. Because A.H. has failed to either argue or prove sex discrimination, his equal protection claims should fail. Since his Title IX claims depend on his proving sex discrimination, they fail as well. *See* 20 U.S.C. § 1681(a). Accordingly, I would affirm the district court. I concur in part but respectfully dissent in part and in the judgment.